IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAKE EARL HENDRIX, § | | |
| TDCJ #1415745, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-08-0574 |
| § | | |
| NATHANIEL QUARTERMAN, Director, § | | |
| Texas Department of Criminal Justice - § | | |
| Correctional Institutions Division, § | | |
| Respondent. § | | |

## MEMORANDUM AND ORDER

State inmate Jake Earl Hendrix (TDCJ #1415745) seeks a federal writ of habeas corpus under 28 U.S.C. §2254, to challenge his state court conviction for sexual assault of a child on the grounds that he was incompetent to enter a guilty plea. The respondent has answered with a motion for summary judgment, arguing that Hendrix is not entitled to relief. (Doc. # 17). Hendrix has filed a response. (Doc. # 19). After considering all of the pleadings, the state court records, and the applicable law, this Court **grants** the respondent's motion and **dismisses** this case for reasons set forth below.

**I.     BACKGROUND**

Hendrix is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). A Harris County grand jury returned an indictment against Hendrix in cause number 1088610, accusing him of sexually assaulting a person younger than seventeen years of age. *See Clerk's Record*, at 9. On

January 18, 2007, Hendrix pleaded guilty to those charges in the 232nd District Court of Harris County, Texas, in exchange for a ten-year prison sentence. *See id*. at 10-11. The trial court admonished Hendrix at length about the consequences of his plea and found him guilty as charged after determining that he was "mentally competent" and that the plea was "free and voluntary" in character. *Id.* at 11, 17-18.

Hendrix filed a notice of appeal, but he later filed a motion to dismiss that proceeding. *See Hendrix v. State*, No. 01-07-00303-CR (Tex. App. — Houston [1st Dist.]). Thereafter, Hendrix filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. In that application, Hendrix complained that he was denied effective assistance of counsel in connection with his guilty plea because his attorney failed to conduct an adequate investigation of his "mental health" or request a "mental competency hearing." Hendrix argued, therefore, that his guilty plea was invalid.

The state habeas corpus court requested an affidavit from Hendrix's defense counsel, Frances M. ("Poppy") Northcutt. Northcutt stated that neither Hendrix nor his behavior gave any indication that he was incompetent because he was able to discuss "the facts of the case and his legal options rationally and with insight into the practical realities of his situation." *Ex parte Hendrix*, No. 68,732-02 at 158. Northcutt noted that Hendrix was quite concerned about the charges against him because he had a prior conviction for a sexual offense involving a child and a prior conviction for failure to register as a sex offender. *See id*. Northcutt was aware that Hendrix had a history of depression. *See id*. Because of this history, Northcutt inquired each time she saw Hendrix whether he was getting his mediation

2

and how he was feeling. *See id*. Northcutt, who interviewed Hendrix's wife about the case and his history, explains that she did not investigate Hendrix's mental health further because "in all his dealings with [her] he appeared fully aware of what was going on and completely rational." *Id.* at 158-59. Northcutt noted that, because of Hendrix's criminal record, the prosecutor's initial plea bargain offer was for a forty-year prison sentence. *See id*. at 159-61. Hendrix offered to plead guilty and asked Northcutt to seek a recommendation of eight to ten years. *See id*. at 160. The prosecutor accepted the offer and agreed to recommend a sentence of ten years if Hendrix would plead guilty that same day. *See id.* Hendrix agreed. *See id*. Northcutt believed that the guilty plea was knowingly and voluntarily entered because Hendrix was the one who "initiated the deal he took." *Id.* According to Northcutt, Hendrix was aware of the consequences, including the requirement that he register as a sex offender for the rest of his life, and he told her that he had "given a lot of thought to his options" but did not "want to risk a trial." *Id.*

The state habeas corpus court, which also presided over Hendrix's guilty plea proceeding, found that the facts stated in Northcutt's affidavit were "true," and entered the following findings of fact:

1. [Hendrix] neither exhibited any behavior nor provided trial counsel with any information indicating that he could be legally incompetent to stand trial;

2. [Hendrix] was legally competent to stand trial and to enter a guilty plea in cause number 1088610;

    3.    [Hendrix] expressed a desire not to proceed to trial, but instead, to enter into a plea bargain agreement for ten (10) years in prison;

    4.    The trial court properly admonished [Hendrix] as required by law prior to accepting his guilty plea;

    5.    The totality of the representation afforded [Hendrix] was sufficient to protect his right to reasonably effective assistance of counsel;

    6.    [Hendrix's] guilty plea was knowingly and voluntarily entered;

    7.    [Hendrix] has failed to demonstrate that his conviction was improperly obtained.

*Ex parte Hendrix*, No. 68,732-02 at 164. Based on these findings, the state habeas corpus court concluded that Hendrix was not entitled to relief. *See id*. The Texas Court of Criminal Appeals agreed and denied relief, without a written order, based on the findings made by the trial court.

Hendrix now seeks a federal writ of habeas corpus to challenge his conviction under 28 U.S.C. § 2254. In that petition, Hendrix raises the same ineffective-assistance claims that were rejected in state court. The respondent argues that Hendrix is not entitled to relief under the federal habeas corpus standard of review. Hendrix has filed a set of objections in response. The parties' contentions are addressed below under the applicable legal standard.

## II. STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies

to those habeas corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. *See* 28 U.S.C. § 2254(b). To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted). The burden is on the

petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the

implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

## III.   DISCUSSION

Hendrix pleaded guilty to the sexual assault charges against him in exchange for a ten-year prison sentence. As a general rule, "[a] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal. *See Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). Rather, the validity of a plea may be challenged only on the grounds that it was made on the constitutionally defective advice of counsel or that the defendant could not have understood the terms of the bargain he agreed to. *See id*. (citations omitted). Thus, by pleading guilty to an offense a criminal defendant waives all non-jurisdictional defects preceding the plea. *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993). This includes those claims for ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 200 F.3d 386, 392 (5th Cir. 2000).

Hendrix contends that his guilty plea was invalid because his attorney failed to request a competency hearing or investigate his competency. Crediting an affidavit filed by Hendrix's defense counsel in response to these allegations, the state habeas corpus court concluded that Hendrix was competent and that his counsel was not ineffective. Because

ineffective assistance of counsel presents a mixed question of law and fact, Hendrix must demonstrate that the state court's decision was contrary to or involved an unreasonable application of "clearly established Federal law" in order to prevail.  *See* 28 U.S.C. § 2254(d)(1); *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006).  Moreover, the state habeas corpus court's finding that Hendrix was competent is entitled to the presumption of correctness found in 28 U.S.C. § 2254(e)(1).  *See Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (noting that competency to stand trial is a "factual issue," the resolution of which is entitled "presumptive weight") (citations omitted); *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997) (holding that, in the absence of "clear and convincing evidence" to the contrary, "the factual determination that Carter was competent to stand trial is conclusive and binding" on federal habeas corpus review).

   The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must satisfy the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both of the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense.  Failure to prove either prong of the *Strickland* test will defeat an ineffective-assistance claim.  *See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

To establish deficient performance, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)). Further, to prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Bond v. Dretke*, 384 F.3d 166, 168 (5th Cir. 2004). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

As noted above, Hendrix alleges that his attorney was deficient, and that he was prejudiced as a result, because she failed to request a competency hearing or to conduct a sufficient investigation of his competency. The test for measuring competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a

9

reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. *See Indiana v Edwards*, — U.S. —, 128 S. Ct. 2379, 2383 (2008) (citing and quoting from *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam) and *Drope v. Missouri*, 420 U.S. 162, 171 (1975)); *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994). *See also* TEX. CODE CRIM. PROC. ANN. Chapter 46B (West 2006) (governing competency to stand trial), formerly codified at TEX. CODE CRIM. PROC. ANN. art. 46.02. According to the affidavit presented on state habeas corpus review, Hendrix's defense attorney did not request a competency hearing because she saw no sign of incompetence based on her repeated dealings with Hendrix, who understood the charges against him and actively participated in the plea negotiations:

> . . . I did not believe it was necessary or beneficial to ask for a competency hearing because he always was able to confer productively with me and he thoroughly understood his options and the system. In sum, I had no [good] faith basis [to ask for] such a hearing. [Hendrix] was not a passive bystander nodding agreement during our meetings. He was engaged in the process, actively discussing his views of the evidence and his options. At no time did he ever exhibit any confusion or mental impairment.
>
> . . . I did explain to [Hendrix] the nature of the charge against him and the consequences of his plea. We thoroughly discussed the statements that the complainant made to police as well as the statements of himself to police and of another witness to police. I explained to him that a conviction for this offense would mean he would be required to register as a sex offender for the rest of his lifetime. Also because of the nature of the offense, he would not be eligible for parole until he had served half of the sentence. I also told him that most sex offenders do not make parole at their first eligibility date and actually serve most of their sentences. I told him that because of his prior indecency case in particular, that he could reasonably expect to serve most or even all of his sentence. Before doing the plea, I read all of the plea papers to [Hendrix] and discussed everything contained in those papers with him. He said he understood everything in the plea papers.

*Ex parte Hendrix*, No. 68,732-02 at 159 (paragraphs four and five). The state habeas corpus court, which observed Hendrix during the guilty plea proceeding, also found that he was legally competent. *See id.* at 164.

The record supports defense counsel's assessment and the trial court's findings. The record of the guilty plea proceeding includes written admonishments, signed by Hendrix, his counsel, the prosecutor, and the trial court, which confirm that Hendrix understood the nature of the charges and the proceedings against him. *See Clerk's Record*, at 10-16. In those documents, Hendrix represented that he was mentally competent, that he understood the consequences of his plea, and that he "freely and voluntarily executed [the admonishments] in open court with the advice of [his] attorney." *Id.* at 15. A criminal defendant's "[s]olemn declarations in open court carry a strong presumption of verity," which constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000). Hendrix has failed to overcome that presumption here. Because the record shows that Hendrix was able to consult with his lawyer and prepare his defense, there is no evidence that his counsel was deficient for failing to request a competency hearing. *See McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989) ("There can be no deficiency in failing to request a competency hearing where there is no evidence of incompetency.").

Hendrix claims further that his attorney failed to conduct an adequate investigation of his competency. To demonstrate deficient performance for an alleged failure to investigate, a defendant must state with specificity what that investigation would have

revealed and how it would have changed the outcome of his trial.  *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  Hendrix points to records from the Harris County Mental Health Mental Retardation Authority ("MHMRA"), which show that he sought treatment in 2004 and again in 2006 for suicidal thoughts.  *See Ex parte Hendrix*, No. 68,732-02 at 29-137, 190-97.  Hendrix complained that he was depressed, that he was hallucinating, and dependent on alcohol.  These records reflect that, during this time, Hendrix was diagnosed and treated with medication for a "schizoaffective disorder" and depression.  The records also show that Hendrix was diagnosed with having "poor impulse control," as well as "alcohol dependence" and a "borderline personality disorder."

None of the records presented by Hendrix show that he was unable to understand the proceedings against him or assist his counsel in January of 2007, and they do not show that he was incompetent to enter the guilty plea at issue in this case.  Thus, Hendrix has failed to rebut the trial court's finding that he was competent with clear and convincing evidence to the contrary as required by 28 U.S.C. § 2254(e)(1).  Under these circumstances, Hendrix fails to show that his counsel was deficient for failing to conduct an additional investigation of his competency.

In addition, even if Hendrix were able to show that his counsel was deficient for failing to conduct a more thorough investigation of his mental history, Hendrix does not establish actual prejudice on this record.  Hendrix, who was charged with sexually assaulting a child, does not dispute that he was a repeat sex offender with a prior felony conviction for

a sex offense and a prior conviction for failure to register as a sex offender as required under Texas law. The record indicates that the prosecutor planned to reset Hendrix's case, presumably to amend the indictment to include these additional allegations to enhance his sentence for purposes of punishment. In light of Hendrix's criminal history, the initial plea bargain proposed by the prosecutor was a sentence of forty years' imprisonment. *See Ex parte Hendrix*, No. 67,732-02 at 161. With assistance from his attorney, however, Hendrix was able to negotiate a prison sentence of only ten years. Under these circumstances, Hendrix fails to show that he would have fared better if he had insisted on going to trial. For this additional reason, Hendrix fails to establish that he received ineffective assistance of counsel in connection with his guilty plea.

Absent a showing that his attorney was deficient, or that he was actually prejudiced as a result, Hendrix fails to establish a valid claim for ineffective assistance of counsel. Accordingly, Hendrix fails to show that the state court's decision to deny his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. As a result, Hendrix is not entitled to federal habeas corpus relief.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Doc. # 17) is **GRANTED**.
2. The federal habeas corpus petition is **DISMISSED** with prejudice.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on July 31st, 2008.

_____
Nancy F. Atlas
United States District Judge